**In the Matter of Alvester WILLIAMS, Jr.**
**In the Matter of Marcy M. COATES.**
**Misc. Nos. 49–69, 54–69.**

United States District Court
District of Columbia.
June 10, 1969.

William Garber, Washington, D. C., for Alvester Williams.

Daniel A. Rezneck, Washington, D. C., for Marcy M. Còates.

## MEMORANDUM OPINION

GESELL, District Judge.

On separate applications of Howard University and George Washington University, the United States District Court issued Temporary Restraining Orders on May 6, 1969, and May 19, 1969, respectively, enjoining acts that threatened the regular activities of these educational institutions. When the Court was later advised that these Orders had not been fully obeyed, United States Marshals were instructed to make appropriate arrests. Among those arrested and ordered to show cause why they should not be held in criminal contempt under 18 U.S.C. § 402 were two juveniles, one a student at Howard and the other a student at George Washington. By separate motions they challenged the jurisdiction of the Court, asserting that in the District of Columbia exclusive jurisdiction over juveniles rests in the Juvenile Court by statute. The motions were heard together. A matter of first impression is presented.

The Temporary Restraining Orders were broadly framed to deal with conditions of unrest on the campuses. Each University invoked the Court's aid so that those desiring an education could receive it without molestation from others who were ignoring orders of duly constituted University authorities. The Orders were issued to keep University facilities open and to free non-participating students and the faculty from improper interference. The Orders applied to students and non-students whether adults or juveniles without exception.

The suggestion now made that another court is the proper court to discipline any persons charged with violating this Court's orders is unacceptable. The inherent power of a court, particularly a court of equity such as this, to punish for contempt of its lawful processes cannot be questioned. This power is essential to the proper conduct of the judicial function and without it a court would be unable to preserve decorum or assert its authority by order or decree. As was stated In Re Debs, 158 U.S. 564 at 594–595, 15 S.Ct. 900 at 910, 39 L.Ed. 1092 (1895):

* * * the power of a court to make an order carries with it the equal power to punish for a disobedience of

that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court. And this is no technical rule. In order that a court may compel obedience to its orders it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal * * would operate to deprive the proceeding of half its efficiency.

Other authorities to the same general effect are numerous. See Myers v. United States, 264 U.S. 95, 44 S.Ct. 272, 68 L.Ed. 577 (1924); Bessette v. W. B. Conkey Co., 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997 (1904); Ex Parte Robinson, 86 U.S. (19 Wall) 505, 22 L.Ed. 205 (1874); Ex Parte Bradley, 74 U.S. (7 Wall) 364, 19 L.Ed. 214 (1869).

■ This inherent authority over contempt is rooted in the common law and has been recognized in this country since early Colonial times. Indeed, the United States Code itself is explicit on the point, providing in Title 18 U.S.C. § 401 that:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as

\* \* \* \* \* \*

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

■ Defendant's base their challenge to the Court's jurisdiction upon the following provisions of the District of Columbia Code establishing the Juvenile Court.

Section 11–1551(a) (1) (A) of the D. C.Code states:

(a) Except as herein otherwise provided, the Juvenile Court has original and exclusive jurisdiction of all cases and in proceedings:

(1) concerning a child * * *

(A) who has violated a law, or has violated an ordinance or regulation of the District of Columbia * * *.

Section 11–1552 of the D.C.Code states:

When during the pendency of a criminal or quasi-criminal charge against a person under 21 years of age, in another court, it is ascertained that the person was under the age of 18 years at the time of the alleged offense, the court shall forthwith transfer the case, together with all the papers, documents, and testimony connected therewith, to the Juvenile Court.

Since the juveniles before the Court are charged with a violation of law, 18 U.S.C. § 402, the argument is pressed that Congress has placed exclusive authority in the Juvenile Court to act and that this Court is precluded from taking full action to see that its own orders are carried out.

The inherent power of the Court cannot be so lightly brushed aside. It is doubtful that Congress could constitutionally wholly deprive a United States District Court of this power but, however that may be, surely it should not be implied that Congress intended to take such a far-reaching step without having made any reference to the point. And yet such would be the case if defendants' arguments were accepted. There is nothing in the Juvenile Court Act, congressional reports or the debates dealing with the subject. In fact, when contempt was mentioned it was only with respect to the provisions concerned with contempt of orders of the Juvenile Court, 11 D.C. Code § 1581; contempt of orders of the United States District Court by juveniles was not mentioned. Undoubtedly the problem here presented for the first time occurred to no one when the legislation was under consideration. An interpretation of the D.C.Code consistent with common sense and long-standing principles of Anglo-Saxon jurisprudence is required. It clearly was neither the intention nor purpose of the Juvenile Court statutes to deprive this Court of its inherent contempt powers. This is the only interpretation appropriate under the circumstances.

Other courts confronted with closely analogous problems involving reconciliation of juvenile statutes with the contempt authority of superior courts have reached the same conclusion. Application of Balucan, 44 Haw. 271, 353 P.2d 631 (1960); Young v. Knight, 329 S.W. 2d 195 (Ky.Ct.App.1959), rehearing denied (1959).

In disposing of these cases as to the juveniles the Court will not be unmindful of their special status. The provisions of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031 et seq. are available, as are the special dispensations contained in the Federal Youth Corrections Act, 18 U.S.C. §§ 5005 et seq. Separate trials have been afforded and any disposition made following conviction will take into account those types of confinement or probation appropriate for a juvenile.

Both motions to dismiss for want of jurisdiction are denied. Counsel to submit appropriate orders.