570 So.2d 1335 (1990)
T.D.L., a Child, Petitioner,
v.
Greg CHINAULT, Director, Polk County Juvenile Detention Center, and/or Lawrence Crow, Sheriff, Polk County, Respondents.
No. 90-01069.
District Court of Appeal of Florida, Second District.
July 11, 1990.
James Marion Moorman, Public Defender, and Howardene Garrett, Asst. Public Defender, Bartow, for petitioner.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Stephen A. Baker, Asst. Atty. Gen., Tampa, for respondents.
PER CURIAM.
Petitioner T.D.L., a juvenile, seeks a writ of habeas corpus to secure his release from *1336 custody. We find that T.D.L.'s present custody status is without lawful basis and grant the petition. T.D.L. was sentenced to an unusual combination of secure detention followed by incarceration in county jail to punish an act which might have constituted direct criminal contempt. We hold that the trial court had no authority to sentence a juvenile to secure detention for punishment, and could not impose an adult sanction for contempt upon this juvenile without first following the procedures specified in section 39.111(7), Florida Statutes (1989).
On March 21, 1990, T.D.L. found himself before the juvenile division of the circuit court for disposition of several delinquency petitions. Each of the proven delinquent acts would be misdemeanors if charged against an adult. The court's order of commitment presented T.D.L. with three options, all of the "boot camp" variety. Apparently this did not meet with his satisfaction, for he wadded up the commitment papers and threw them onto the public defender's table. The court thereupon adjudged T.D.L. to be in contempt of court and imposed the following unusual disposition, which is the basis for the instant petition: 179 days in secure detention, to be converted to a county jail sentence once T.D.L. reached his eighteenth birthday (April 11, 1990).
T.D.L. challenges both the secure detention and the incarceration in county jail. The issue of secure detention is subject to a simple analysis, whereas the incarceration in county jail after T.D.L. becomes an adult is more difficult.
Prior to our analysis of either issue, however, we would note that this hybrid sentence, involving concepts of both juvenile and adult punishment, is a judicial solution of questionable merit. A hybrid of juvenile and adult sanctions appears to be at crosspurposes. As stated in K.P. v. State, 327 So.2d 820, 821 (Fla. 1st DCA 1976), "Ideally, the juvenile court system in Florida is designed to substitute for retributive punishment alternative methods of training and treatment designed to further the correction and rehabilitation of children who violate the laws and to provide for the care, guidance, and control which will be conducive to the child's welfare and the best interests of society."
Turning to T.D.L.'s first issue, he challenges the use of secure detention to punish his contemptuous conduct. In response, the state relies upon existing authority approving the use of secure detention for this purpose. See, e.g., R.M.P. v. Jones, 419 So.2d 618 (Fla. 1982); O.W. v. Byrd, 461 So.2d 967 (Fla. 5th DCA 1984). The foregoing authority, however, predates section 39.0321, Florida Statutes, enacted in 1988. Ch. 88-831, § 14, Laws of Fla. In this recent enactment, the legislature has specifically proscribed the use of secure detention for punishment. Thus, it is clear that the trial court is no longer permitted to punish a contemptuous juvenile with secure detention.
Although the juvenile cannot be punished for his contempt by placement in secure detention, the trial court is not powerless to impose a jail sentence for direct contempt by a juvenile in the juvenile court. Under appropriate findings, it is possible that the contempt can be punished by adult incarceration in county jail. There are various statutory methods for treating serious or recidivist juvenile offenders as adults, once it becomes apparent that they have progressed beyond whatever remedial and corrective alternatives the juvenile system offers. It may be, as the state suggests, that the trial court intended to treat T.D.L. as an adult for purposes of punishing his contemptuous act. Although T.D.L. was not first "waived over" or otherwise formally transferred to adult status, this fact alone may not render the trial court's action fatally defective. Case law suggests the court need not have followed the formal prerequisites of the juvenile code in arraigning an underage contemnor. It does not appear, however, that adult sanctions for contemptuous conduct are available *1337 absent compliance with relevant statutes.
There are surprisingly few reported decisions, from Florida or elsewhere, dealing with juvenile contempt and the appropriate procedures and punishments to be employed in such cases. It seems generally conceded, however, that the inherent power of a court to punish for contempt against its authority is not extinguished just because the offender happens to be a juvenile. For example, a court need not transfer a recalcitrant juvenile witness to a separate juvenile division in order to coerce performance of its directives through contempt. Bryant v. State, 256 Ind. 587, 271 N.E.2d 127 (1971); Application of Balucan, 44 Hawaii 271, 353 P.2d 631 (1960); Young v. Knight, 329 S.W.2d 195 (Ky. 1959). Similarly, where a court sought to enforce a restraining order by punishing a juvenile who had violated its provisions, transfer was not required. In re Williams, 306 F. Supp. 617 (D.D.C. 1969).
Consistent with this line of authority, our supreme court has held, in R.M.P., that a trial court need not proceed under Chapter 39 when initiating contempt proceedings against a juvenile for a willful failure to abide by prior orders of the court. Accordingly, the trial court in the present case did not err by proceeding to adjudicate T.D.L. for contempt absent a delinquency petition  no more than it would have erred by finding an adult a contemnor in the absence of an information or other formal charging instrument.
The method of punishment, however, may be another matter. The rationale that permits the summary initiation of a contempt "prosecution"  the need to reinforce the court's authority in expeditious fashion  is not served by procedural laxity when determining what should be done with the child once adjudicated. In Thomas v. State, 21 Md. App. 572, 320 A.2d 538 (1974), a fifteen-year-old witness was jailed for disruptive courtroom behavior; while upholding that finding the appellate court nevertheless cautioned trial judges to "bear in mind, in meting out punishment, that they are dealing with a juvenile." 320 A.2d at 542. The decision in In re Williams, an order denying the juvenile's motion to dismiss, notes that "any disposition made following conviction will take into account those types of confinement or probation appropriate for a juvenile." 306 F. Supp. at 620. In R.M.P., notwithstanding the court's holding that formal Chapter 39 charging proceedings were not mandatory, a juvenile sanction rather than an adult sanction was utilized to punish the contemptuous child.
The court below, before imposing its hybrid punishment upon T.D.L., did not foreclose the suitability of juvenile sanctions as required by section 39.111(7), Florida Statutes (1989). These provisions are mandatory for juveniles prosecuted as adults. Boudreau v. State, 546 So.2d 1152 (Fla. 2d DCA 1989); Reed v. State, 544 So.2d 1077 (Fla. 2d DCA 1989); Eady v. State, 388 So.2d 9 (Fla. 2d DCA 1980). Even when the child reaches adulthood between the time of the offense and the date of disposition, such that he is not even a "juvenile" when before the court, the statute should be followed. Green v. State, 506 So.2d 41 (Fla.2d DCA 1987); Rathbone v. State, 448 So.2d 85 (Fla. 2d DCA 1984).
We have found one recent case which suggests, by silence, that an underage contemnor may be sentenced as an adult without the findings required by section 39.111(7). B.M. v. State, 523 So.2d 1185 (Fla. 2d DCA 1988). However, the contemptuous episode occurred directly after that juvenile defendant had been waived to adult court. The issue whether the trial court should have justified by separate order its adult jail sentence does not appear to have been raised. Now that it has been squarely presented, we hold that the entry of specific findings, pursuant to section 39.111(7), are necessary in the event a trial court desires to impose adult sanctions for contemptuous conduct by a juvenile. *1338 Our conclusion in no way infringes upon a court's inherent power to proceed expeditiously against contemptuous acts, which we view as the basis for the supreme court's holding in R.M.P. The punishment in the summary proceeding, however, must be an appropriate juvenile sanction unless section 39.111(7) is satisfied.
Accordingly, we find that no aspect of the trial court's plan for punishing T.D.L. was authorized by law. Thus, the court will have to consider other alternatives or, possibly, revisit the question of whether adult sanctions can be justified. The petition for writ of habeas corpus is granted. The respondent is directed to release T.D.L. forthwith, and this case is remanded for further proceedings consistent with this opinion.
SCHOONOVER, C.J., and FRANK and ALTENBERND, JJ., concur.