604 So.2d 813 (1992)
A.A., a Juvenile, Petitioner,
v.
Cornell ROLLE, Etc., Respondent.
L.L., a Child, Petitioner,
v.
James WOOLSEY, etc., Respondent.
A.M.R., a child, Petitioner,
v.
State of Florida, Respondent.
T.T., a child, Petitioner,
v.
STATE of Florida, Respondent.
T.S., a child, Petitioner,
v.
STATE of Florida, Respondent.
L.S., a child, Petitioner,
v.
STATE of Florida, Respondent.
Nos. 78142, 78571, 78572, 78577, 78665 and 79071.
Supreme Court of Florida.
July 23, 1992.
Rehearing Denied October 2, 1992.
*814 Bennett H. Brummer, Public Defender, and Robert Burke and Elliot H. Scherker, Asst. Public Defenders, Miami, and Louis O. Frost, Jr., Public Defender, and Ward L. Metzger, Asst. Public Defender, Jacksonville, for petitioners.
Robert A. Butterworth, Atty. Gen., and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for respondent.
Claudia Wright, Clinical Professor, Florida State University, College of Law, Tallahassee, amicus curiae, for the Children's Advocacy Center, joined by Children First: A Joint Project in Law, Medicine and Educ.
BARKETT, Chief Justice.
We have for review six consolidated cases involving juveniles who were adjudicated guilty of contempt of court and sentenced to varying periods of incarceration in secure detention facilities. A.A. v. Rolle, 580 So.2d 282, 285 (Fla.3d DCA 1991); L.L. v. Woolsey, 583 So.2d 823, 823 (Fla.1st DCA 1991); A.M.R. v. State, 583 So.2d 823, 824 (Fla.1st DCA 1991); T.T. v. State, 583 So.2d 736, 736 (Fla.1st DCA 1991); In re T.S., 585 So.2d 498, 498 (Fla. 1st DCA 1991); In re L.S., 589 So.2d 467, 467 (Fla.1st DCA 1991). In A.A. and L.L., the district courts denied the children's petitions for writs of habeas corpus and affirmed the sentences. A.M.R., T.T., T.S., and L.S. are per curiam affirmances. All the decisions certified conflict with T.D.L. v. Chinault, 570 So.2d 1335 (Fla.2d DCA 1990).[1]
Four cases, A.M.R., T.T., T.S., and L.S., involve children who were in the jurisdiction of the courts because they were physically or sexually abused or neglected and thereby adjudicated "dependent."[2] These four children were found guilty of indirect contempt of court[3] for violating court orders not to run away from their current placements and/or to attend school. Two cases, A.A. and L.L., involve juveniles who were previously adjudicated "delinquent."[4] These children were sentenced to secure detention for direct contempt of the court.[5]
The issue to be resolved here is not whether juveniles can be found in contempt of court, but whether they can be punished by incarceration in "secure detention facilities"[6] *815 for contempt of court. All parties concede that the juvenile court has the inherent power to adjudicate juveniles in contempt of court. The only question is whether the legislature has precluded the use of facilities it has designated for a specific purpose, secure detention facilities, for punishing such juveniles.
It is beyond question that the legislature has the power to determine how and to what extent the courts may punish criminal conduct, including contempt. Thus, although it has been recognized that courts have both an inherent and a statutory power to make a finding of contempt, see, e.g., State ex rel. Giblin v. Sullivan, 157 Fla. 496, 507, 26 So.2d 509, 515-16 (1946); § 38.22, Fla. Stat. (1991), the sanctions to be used by the courts in punishing contempt may properly be limited by statute. See, e.g., Aaron v. State, 284 So.2d 673, 676 (Fla. 1973) (holding that criminal contempt is a common-law crime in Florida and, accordingly, the maximum punishment, by statute, is one year in prison and a $500.00 fine). As stated by this Court in Ex parte A.K. Edwards:

[I]n the absence of any statutory limitations or restrictions, the power of the several courts over "contempts" is omnipotent, and its exercise is not to be enquired into by any other tribunal... .
The genius of our people, however, ever sensitively jealous of restraints upon the personal liberty of the citizen, has caused them, through the action of the legislative department, to limit and restrict this common law power of the courts.
11 Fla. 174, 186 (1867) (emphasis added); see also State ex rel. Grebstein v. Lehman, 100 Fla. 481, 483-84, 129 So. 818, 820 (1939).[7] Thus, we must now determine how the legislature has addressed the question presented.
The pertinent statutory provisions in this case concern the 1988 and 1990 amendments to chapter 39, the "Florida Juvenile Justice Act." The State argues that neither the 1988 nor the 1990 amendments prohibit the incarceration of juvenile contemnors in secure detention facilities. Alternatively, the State argues that even if the 1988 amendments could be read as containing such a prohibition, the enactment of section 39.044(10), Florida Statutes (Supp. 1990), now indicates legislative intent to permit secure detention for juvenile contemnors.
In 1988 the Florida legislature undertook substantial amendments and revisions to chapter 39 with the stated specific intent of restricting the placement of juveniles in secure detention. See ch. 88-381, §§ 12-14, Laws of Fla. The codified provision on legislative intent reads:
[I]t is the intent of the Legislature that detention under the provisions of part I of this chapter be used only when less restrictive interim placement alternatives prior to adjudication and disposition are not appropriate. It is further the intent of the Legislature that decisions to detain be based in part on a prudent assessment of risk, and that decisions to detain be limited to situations where there is clear and compelling evidence that a child presents a danger to himself or the community, presents a risk of failing to appear, or is likely to commit a subsequent law violation prior to adjudication and disposition.
§ 39.1105, Fla. Stat. (Supp. 1988) (emphasis added). Accordingly, the legislature enacted section 39.0321, Florida Statutes (Supp. 1988), which provided:

*816 39.0321 Prohibited use of secure detention. 

A child alleged to have committed a delinquent act shall not be placed in secure detention for the following reasons:
(1) To punish, treat or rehabilitate the child.

(2) To allow a parent to avoid his or her legal responsibility.
(3) To permit more convenient administrative access to the juvenile.
(4) To facilitate further interrogation or investigation.
(5) Due to lack of more appropriate facilities.
(Emphasis added). "Secure detention facility" was defined by the legislature as "a physically restricting facility for the temporary care of children, pending delinquency adjudication or court disposition." § 39.01(45), Fla. Stat. (Supp. 1988). Thus, under section 39.0321, a juvenile could never be placed in secure detention for any of the reasons enumerated. More specifically, a delinquent child could only be placed in secure detention based on the risk assessment guidelines set forth in section 39.032, Florida Statutes (Supp. 1988). That assessment looked to whether the child was at risk of failing to appear at the detention hearing, was a danger to himself or the community, or was likely to commit a subsequent violation of law prior to disposition. See § 39.032(2)(a)-(f), Fla. Stat. (Supp. 1988).
In T.D.L. v. Chinault, 570 So.2d 1335, 1336 (Fla. 2d DCA 1990), the Second District held correctly:
Turning to T.D.L.'s first issue, he challenges the use of secure detention to punish his contemptuous conduct. In response, the state relies upon existing authority approving the use of secure detention for this purpose. See, e.g., R.M.P. v. Jones, 419 So.2d 618 (Fla. 1982). The foregoing authority, however, predates section 39.0321, Florida Statutes, enacted in 1988. In this recent enactment, the legislature has specifically proscribed the use of secure detention for punishment. Thus, it is clear that the trial court is no longer permitted to punish a contemptuous juvenile with secure detention.

(Citations omitted) (emphasis added).
In 1990 the legislature revisited chapter 39 to make it clear that dependent children, as well as delinquent children, could not be placed into secure detention as a means of punishment. See Ch. 90-208, § 5, Laws of Fla. Former section 39.0321 was renumbered as section 39.043, Florida Statutes (Supp. 1990), and provides:
39.043 Prohibited uses of detention.
(1) A child alleged to have committed a delinquent act or violation of law shall not be placed into secure, nonsecure, or home detention care for any of the following reasons:
(a) To punish, treat or rehabilitate the child; ....
(2) A child alleged to be dependent or in need of services shall not, under any circumstances, be placed into secure detention care solely for these reasons.
§ 39.043, Fla. Stat. (Supp. 1990) (emphasis added). "Secure detention" was specifically defined in section 39.01(45), Florida Statutes (Supp. 1990):
"Secure detention center or facility" means a physically restricting facility for the temporary care of children, pending adjudication, disposition, or placement.

(Emphasis added).
As in the 1988 amendments, one of the legislature's primary concerns in 1990 was the improper uses of secure detention. The Preamble to the Florida Juvenile Justice Reform Act of 1990 provides:

[P]ublic safety is compromised by the inappropriate placement of children into secure detention, because those children are then exposed to negative role models, are given the opportunity to learn new crime techniques, and may become victims of intimidation and violence.
Ch. 90-208, Preamble at 1085, Laws of Fla. (emphasis added). Accordingly, the changes further clarified, consistent with T.D.L., that secure detention facilities were *817 not the facilities to be used to punish juveniles for contempt of court. Instead, the facilities were only to be used as a temporary measure to ensure the child's appearance in court or to protect the child or the public against increased safety risks.[8]
Despite these clear legislative pronouncements against the use of secure detention as a means of punishment, the State argues that the children have overlooked the phrase "alleged to have committed" in section 39.043 (and former section 39.0321). The State suggests that phrase renders the sections inapplicable to the instant cases because the children here are not preadjudicatory; they have already been adjudicated dependent or delinquent. In other words, the State argues that section 39.043 does not forbid the secure detention of juvenile contemnors because the legislature only meant to prohibit the preadjudicatory punishment of juveniles. We find such a construction illogical. It is unreasonable to suppose that the legislature felt the need to enact a statute to tell the courts that they could not punish juveniles (or anyone) prior to any adjudication or court disposition. Consequently, the State's reading would render section 39.042 absolutely meaningless. We are unable to credit such an interpretation. See, e.g., Neu v. Miami Herald Publishing Co., 462 So.2d 821, 825 (Fla. 1985) ("In construing legislation, courts should not assume that the legislature acted pointlessly.").
Notwithstanding its decision in T.D.L., however, the Second District subsequently held that the 1990 amendments to chapter 39 specifically allowed for the placement of contemptuous juveniles in secure detention. L.M. v. State, 592 So.2d 1210, 1211 (Fla. 2d DCA 1992). In so deciding, the Second District relied on the newly enacted section 39.044(10), Florida Statutes (Supp. 1990), which provides in part:
Any child placed into detention for contempt of court shall be represented by legal counsel as provided in s. 39.041. The following due process rights must be provided during all stages of any proceeding under this chapter:
(a) The right to have the charges against the child in writing served a reasonable time before the hearing.
(b) The right to a hearing before the court.
(c) The right to an explanation of the nature and consequences of the proceeding.
(d) The right to confront witnesses.
(e) The right to present witnesses.
(f) The right to have a transcript or record of the proceedings.
(g) The right to appeal to an appropriate court.
The court below in A.A. v. Rolle held, consistent with L.M. and also relying on section 39.044(10), that the purpose of the 1990 amendments "was not to preclude the use of secure detention as a sanction for contempt, but rather to assure that appropriate procedural safeguards are employed." 580 So.2d at 284.
Obviously, any restriction on a person's liberty, juvenile or adult, can only occur if the proper procedural safeguards are followed. Thus, any type of detention  home, nonsecure, or secure  requires first that a child be accorded every constitutional safeguard. See, e.g., In re Gault, 387 U.S. 1, 31-59, 87 S.Ct. 1428, 1445-60, 18 L.Ed.2d 527 (1967) (holding that the Due Process Clause of the federal constitution guarantees juveniles in delinquency proceedings that may result in commitment to an institution the right to counsel, the right to confront witnesses, the right to invoke the Fifth Amendment privilege against self-incrimination, and adequate parental notice of the hearing and the specific charges).
As the court below noted, the obvious purpose behind section 39.044(10) was to afford basic constitutional safeguards to *818 juveniles and specifically to assure legal counsel to all children, including indigents, who are charged with contempt of court and are thereby facing any restriction on their liberty. Section 39.044(10) only refers to "detention"  which by definition in section 39.01(16), Florida Statutes (Supp. 1990), can refer to "secure," "nonsecure," or "home" detention. Thus, contrary to the Second and Third Districts' readings, and the State's argument, section 39.044(10) does not authorize the placement of children into secure detention for contempt of court.
If there is any doubt about this reading, the legislature provided clear direction when it mandated: "It is the intent of the Legislature that this chapter be liberally interpreted and construed in conformity with its declared purposes."
§ 39.001(4), Fla. Stat., (Supp. 1990). Two of the legislature's primary purposes are codified in the first section of chapter 39. The first is:
To provide for the care, safety, and protection of children in an environment that fosters healthy social, emotional, intellectual, and physical development; to ensure secure and safe custody; and to promote the health and well-being of all children under the state's care.
§ 39.001(2)(b), Fla. Stat. (Supp. 1990) (emphasis added). The second is:
To assure due process for each child, balanced with the state's interest in the protection of society, by substituting methods of prevention, early intervention, diversion, offender rehabilitation, treatment, community services, and restitution in money or in kind for retributive punishment, whenever possible... .
§ 39.001(2)(c), Fla. Stat. (Supp. 1990) (emphasis added).
To adopt the State's arguments would result in entirely disregarding the plain language of the statutory definition of "secure detention," the specific prohibitions against the use of secure detention as punishment, and the entire intent and thrust of the 1988 and 1990 amendments to the Florida Juvenile Justice Act. The quintessential irony of adopting such an argument is that children who are found to be dependent or in need of services would be incarcerated in a facility designed to hold those who are an imminent threat to public safety. Dependent children and children in need of services are not criminals; it has been determined that they have been neglected or physically, emotionally, or sexually abused. § 39.01(10), Fla. Stat. (Supp. 1990). The acts of contempt committed by the dependent children in this case constituted running away from home and refusing to go to school. These acts are ones that the legislature deems a sign of children in need of services, not children in need of punishment. See § 39.01(8)(a), Fla. Stat. (Supp. 1990). It is inconceivable that a system of justice that has removed these children from their parents or guardians, ostensibly "[t]o provide ... care, safety, and protection," section 39.001(2)(b), would instead incarcerate them because of resultant behavior attributable to neglect or abuse.[9]
We therefore hold that, under chapter 39, juveniles may not be incarcerated for contempt of court by being placed in secure *819 detention facilities. We are aware that two of our previous decisions suggest a different result. A.O. v. State, 456 So.2d 1173, 1175 (Fla. 1984); R.M.P. v. Jones, 419 So.2d 618, 620 (Fla. 1982). Those decisions were rendered before the 1988 and 1990 amendments to chapter 39. As this opinion indicates, the amendments specifically prohibited the use of secure detention facilities to punish juveniles for contempt. We therefore overrule both R.M.P. and A.O. to the extent they are inconsistent with this opinion.
In so holding, we are not unmindful of the frustration of judges confronted with children who have been taken away from their parents because of abuse or neglect, as well as children whose abuse or neglect may have caused them to become delinquent. The lack of adequate placement alternatives or mental and physical health services for children needing them is a recurring daily problem in our juvenile system. Even though the legislature has recognized the critical need to provide appropriate placements or services for such children, these services have not been made available. See Commission on Juvenile Justice, 1991 Annual Report to the Florida Legislature: Executive Summary 2 (Dec. 1991) ("The Commission continues to combat cuts to the Juvenile Justice Reform budget."); Commission on Juvenile Justice, Legislative Consensus Conference Report 8 (Nov. 1991) ("There was overwhelming agreement by participants at the Consensus Conference that the funding level for juvenile justice programs was deplorable."); Juvenile Justice System Review Task Force, Final Report of Findings and Recommendations 31 (Mar. 1990) ("The Task Force finds that the core deficiencies of Florida's juvenile justice system are the result of lack of funding.").[10] The courts, however, cannot attempt to supply the legislative vacuum in this fashion.
We quash in part the decisions below, approve the decision in T.D.L., and remand for proceedings consistent with this opinion.
It is so ordered.
SHAW, GRIMES and KOGAN, JJ., concur.
HARDING, J., concurs with an opinion, in which BARKETT, C.J. and SHAW, J., concur.
OVERTON, J., dissents with an opinion.
McDONALD, J., dissents.
HARDING, Justice, concurring.
While I concur with the majority, I do so with sadness because once again the children of this state have suffered neglect at the hands of the government. The legislature has deprived the courts of the option of detention in juvenile contempt proceedings, and has provided no effective alternative to meet the needs of children who are in contempt of court.
The citizens of Florida look to the courts to protect them from increasing juvenile delinquency and to help control children who persistently run away from parents or custodians, who are habitually truant from school, and who persistently disobey the reasonable and lawful demands of parents or custodians. Yet, the courts are rendered impotent by this lack of an effective way to enforce court orders or to punish for a violation of those orders.
While there are instances of civil contempt in juvenile jurisprudence, most juvenile contempt falls into the arena of criminal contempt. A child who is before the court for criminal contempt has violated a court order, such as "You are required to *820 attend school" or "You shall not run away from home" while under supervision of HRS. The court uses contempt to punish the child for violating the court order. Without this threat of punishment, contempt is rendered meaningless and there is no deterrent from committing the prohibited behavior.
The petitioners suggest alternatives to confinement, such as requiring the child to perform community service or to write a paper. Such punishment is unrealistic and impractical. Children who fail to comply with community service or refuse to write a paper face no consequences for their failure to comply.
I do not quarrel with prohibiting the use of detention facilities for contempt. The use of those facilities would result in the mixing of delinquents or children awaiting trial on delinquency charges and children not charged with delinquency. Yet, the court needs other programs or resources which can be used to exercise the court's contempt power. Group homes, marine institutes, and confidence-building programs such as Outward Bound have been effective resources for the treatment of delinquents. Similar resources should be provided for children who are not yet delinquent but who have not been able to comply with supervision requirements either because their conduct is ungovernable or because they have refused to attend school.
Florida's juvenile justice system has never been given the opportunity to succeed because adequate funds have never been appropriated to achieve the dual goals of rehabilitating delinquents and protecting dependents.
BARKETT, C.J., and SHAW, J., concur.
OVERTON, Justice, dissenting.
I dissent. First, it should be understood that one of the most important and essential powers of a court is the authority to protect itself against those who disregard its dignity and authority or disobey its orders. The power of a court to protect itself is the power to punish by contempt. The legislature cannot take this inherent power from a court unless the legislature has the specific authority to establish that court. See Michaelson v. United States ex rel. Chicago, St. Paul, Minneapolis & Omaha Ry., 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162 (1924). The circuit court is a constitutionally created court under article V, section 5, of the Florida Constitution, not a legislatively created one. Consequently, the legislature has no authority to eliminate this basic function of a circuit judge acting in his or her capacity as a juvenile judge. While I agree that the provisions of article I, section 15, of the Florida Constitution,[11] grant to the legislature the authority to establish statutory juvenile proceedings, I conclude that the legislature has no constitutional authority to eliminate the basic and essential contempt power of the circuit courts acting in their juvenile court capacity.
Further, I do not believe that the legislature intended to restrict the court's contempt power and tie juvenile judges' hands in this manner. The statutes at issue do not, by their terms, address either the contempt powers of the court or punishment for contempt. It is only the construction of those statutes by the majority that results in an interpretation that effectively eliminates this inherent power of the judge. I would not interpret these statutes in this manner.
The juvenile justice system already has substantial problems and, after this decision, the juvenile court will have no real means to protect itself from those who disregard its authority or disobey its orders. I suggest that the legislature immediately *821 address the problem and return to the judiciary in juvenile proceedings this important and necessary power.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] Section 39.01(10), Florida Statutes (Supp. 1990), provides:

"Child who is found to be dependent" means a child who, pursuant to this chapter, is found by the court:
(a) To have been abandoned, abused or neglected by his parents or other custodians.
(b) To have been surrendered to the department or a licensed child-placing agency for purpose of adoption.
(c) To have been voluntarily placed with a licensed child-caring agency, a licensed child-placing agency, or the department, whereupon, pursuant to the requirements of part V of this chapter, a performance agreement has expired and the parent or parents have failed to substantially comply with the requirements of the agreement.
(d) To have been voluntarily placed with a licensed child-placing agency for the purposes of subsequent adoption and a natural parent or parents have signed a consent pursuant to the Florida Rules of Juvenile Procedure.
(e) To be at substantial risk of imminent abuse or neglect by the parent or parents or the custodian.
[3] "Indirect" contempt occurs when the contemptuous act is committed outside the presence of the court. See Pugliese v. Pugliese, 347 So.2d 422, 425 (Fla. 1977); Fla.R.Juv.P. 8.150(b) (setting forth the procedural rules for prosecuting indirect contempt).
[4] Section 39.01(9), Florida Statutes (Supp. 1990), provides:

"Child who has been found to have committed a delinquent act" means a child who, pursuant to the provisions of this chapter, is found by a court to have committed a violation of law or to be in direct or indirect contempt of court, except that this definition shall not include an act constituting contempt of court arising out of a dependency proceeding or a proceeding pursuant to Part IV of this chapter.
[5] "Direct" contempt occurs when the act constituting the contempt is committed in the immediate presence of the court. See Pugliese, 347 So.2d at 425; Fla.R.Juv.P. 8.150(a) (setting forth the procedures for punishing direct contempt).
[6] Section 39.01(45), Florida Statutes (Supp. 1990) provides:

"Secure detention center or facility" means a physically restricting facility for the temporary care of children, pending adjudication, disposition, or placement.
[7] The Court in R.M.P. v. Jones, 419 So.2d 618, 620 (Fla. 1982), upon which the State relies in this case, held:

Since the [trial] court did not find [R.M.P.] in contempt under chapter 39, the punishment options available to the court are not limited by those in chapter 39.
We recede from R.M.P. to the extent that it may suggest conflict with the established principle that the legislature is responsible for determining the punishment for crimes.
[8] The legislature also enacted a new section entitled "Use of Detention" that reiterated that all court orders regarding the use of detention be based on an assessment of risk and reemphasized that "[a] child shall not be placed into detention care, whether secure, nonsecure, or home detention care, if appropriate less restrictive placement alternatives are available." § 39.042(2), Fla. Stat. (Supp. 1990).
[9] Nevertheless, in fiscal year 1990-1991, 351 dependent children in Florida were placed in secure detention for contempt of court.

The destructive impact of juvenile detention was recently addressed in the quarterly report of the Annie E. Casey Foundation:
Few nations lock up a higher portion of their children each year than the United States. In 1989 there were more than 500,000 juvenile admissions to secure publicly operated juvenile detention centers nationwide. There were nearly 100,000 juvenile admissions to adult jails, and more than 50,000 placements in state training schools.
... .
Most researchers have concluded that the detention experience seldom provides meaningful benefits to either youth or their communities. Detention does, however, reinforce a juvenile's self-image as a failure, increases stress within the family, and increases the likelihood that he or she will be placed outside of the home in the future. Research suggests not only that detention does nothing to deter further delinquent behavior, but also that the comingling of minor offenders with youth accused of more serious offenses could encourage delinquency.
Youth who are unnecessarily detained are denied their liberty without sufficient cause. Moreover, young people warehoused in detention are often kept from services that would more appropriately meet their needs and positively influence their behavior. And the possibility of quality care for youth for whom detention is truly warranted is diminished by the strain that unnecessary admissions place on scarce resources.
Voiceless Children: Juvenile Detention in the U.S., Focus, Fall 1991, at 2, 2-5; see also Juvenile Justice System Review Task Force, Final Report of Findings and Recommendations 15 (Mar. 20, 1990) ("These children, who could be better served at home or in alternative settings without compromising public safety, are exposed to negative role models, are given the opportunity to learn new crime techniques, and may become victims of intimidation and violence.").
[10] The 1990 amendments created the Commission on Juvenile Justice to monitor implementation of chapter 39 as amended, to advise the governor and the legislature on juvenile justice issues, and to improve public awareness of the problems in the system. See § 39.023, Fla. Stat. (Supp. 1990).
[11] Article I, section 15, of the Florida Constitution reads as follows:

(a) No person shall be tried for capital crime without presentment or indictment by a grand jury, or for other felony without such presentment or indictment or an information under oath filed by the prosecuting officer of the court, except persons on active duty in the militia when tried by courts martial.
(b) When authorized by law, a child as therein defined may be charged with a violation of law as an act of delinquency instead of crime and tried without a jury or other requirements applicable to criminal cases. Any child so charged shall, upon demand made as provided by law before a trial in a juvenile proceeding, be tried in an appropriate court as an adult. A child found delinquent shall be disciplined as provided by law.