GROSS, J.
Lorna Jensen, the former personal representative of her daughter’s estate, appeals from a civil contempt order entered in a probate proceeding. That order required Jensen’s incarceration until she returned certain items of personal property to the estate. We reverse, because neither the civil contempt order nor the record evidence demonstrate that Jensen had the present ability to comply with the order.
Gina Gambidilla died at age thirty-four. She was survived by her father and her mother, Lorna Jensen. At the time of her death, the decedent lived with her boyfriend, Wayne Bisso. She was a professional artist who sold oil canvasses, graphic design T-shirts, and other mediums of art. Bisso assisted the decedent with sales in her art business.
After learning of her daughter’s death, Jensen initiated an intestate proceeding in Florida. Jensen was appointed personal representative, obtained letters of administration, filed the required notices, and retained an attorney to assist her in discharging her duties. After the attorney informed her of the obligation to protect the estate’s assets and provide for the estate’s expenses, Jensen went to the decedent’s home, accompanied by law enforcement, and removed the decedent’s personal property. Among the items removed were the decedent’s paintings, some graphic design T-shirts, two computers, a compressor, at least two guns, and a pet cat. Jensen later sold some of that property to pay for the decedent’s funeral expenses and took the remaining property back to her home in New Jersey.
After Jensen returned to New Jersey, Bisso discovered a will appointing him personal representative and making him the estate’s primary beneficiary. Granting Bisso’s emergency motions, the probate court removed Jensen as personal representative, appointed Bisso to that position, and required Jensen to return all of the estate’s property within fifteen days.[1]
Because Jensen did not return the estate’s property, Bisso filed a motion for contempt. Representing herself, Jensen attended the contempt hearing by telephone. The trial court ordered her to deliver back to the estate all the items that she had taken.
After that first contempt hearing, Jensen retained new counsel, attorney Brian *919 Beauchamp. With attorney Beauchamp’s assistance, Jensen returned all of the estate’s property except for: (1) the decedent’s pet cat; (2) $3,000 in cash, which Bisso claimed she had taken from the residence; (3) two guns; (4) eleven pieces of art; and (5) a compressor.
Bisso responded by filing a second motion for contempt to recover those missing items. At the second contempt hearing, attorney Beauchamp explained to the court that: (1) the pet cat ran away from Jensen’s home in New Jersey; (2) Jensen never removed $3,000 from the decedent’s residence; (3) Jensen was in the process of shipping the guns; and (4) the remaining items were those that Jensen sold to defray the decedent’s funeral expenses while she was acting as personal representative.
Although Jensen did not attend the hearing, attorney Beauchamp submitted her affidavit, which the trial court accepted into evidence. Her affidavit stated that
[a]ll personal properties that were removed from the house while I was acting as [personal representative] have been returned and I have no personal property of the estate of my daughter and/or Wayne Bisso remaining with me. I have absolutely no original artwork created by my daughter in my possession as of this date. All original artwork has been returned to Wayne Bisso with the exception of the following items which I sold while I was serving as [personal representative] of my daughter’s estate in an attempt to defray costs of her final arrangements, cremation, and other matters pertaining to her death.
The affidavit then itemized the art and other assets Jensen sold and claimed that she received $1,470 in proceeds.
Bisso testified that the missing items were worth over $20,000. The probate court indicated that expert testimony would be necessary to conduct an intelligent valuation of the artwork, but that it would be much “easier just to return it all and not have to worry about the values.” There was some discussion about what Jensen could and could not do to retrieve the paintings. Justifiably, the probate court was looking for a way to expeditiously resolve the problem.
Ultimately, the probate court held Jensen in contempt and ordered her immediate incarceration. The order provided that she could purge her contempt by delivering specified property to Bisso’s attorney. A writ of bodily attachment further stated that the writ could be cancelled if Jensen either (a) delivered the missing property or (b) paid $5,000, and that the purpose of the writ was to bring Jensen before the court “for a hearing to determine her ability to pay or purge” the contempt order.
Jensen argues that since she sold the property before she was removed as personal representative: (1) those sales were lawful; (2) they must be honored by the current PR; and (3) the trial court therefore could not compel Jensen to return the disputed property. However, the discovery of a will and the appointment of a new personal representative rendered the original letters of administration voidable. See In re Williamson’s Estate, 95 So.2d 244, 246 (Fla.1957); Cooper v. Ford & Sinclair, P.A., 888 So.2d 683, 688 (Fla. 4th DCA 2004). It was within the power of the court to order a return of the property where return would be beneficial to the estate.
The problem with the contempt order in this case is that it fails to include a finding that Jensen had the present ability to comply with the order. Nor does the record indicate a present ability to comply with the purge provisions of the order. See Parisi v. Broward County, 769 So.2d 359, 363-65 (Fla.2000); Pompey v. Coch *920 ran, 685 So.2d 1007, 1012-14 (Fla. 4th DCA 1997) (en banc).
Mueller v. Butterworth, 893 So.2d 1158, 1159 (Fla. 4th DCA 1981), is a case where the contempt remedy was used to recover money from a removed personal representative. There, the probate court removed a personal representative and ordered him to return money he had taken from the estate. After the former personal representative failed to comply, the trial court held him in contempt and incarcerated him pursuant to Florida Probate Rule 5.440(d).[2] However, none of the orders entered by the trial court included an affirmative finding that the former personal representative had the ability to repay the estate. This court granted the contem-nor’s writ of habeas corpus, holding:
We do not imprison for debt. Art. I, s. 11, Fla. Const. Therefore, a finding that the debtor ordered to pay is able to pay and willfully refuses to do so is the touchstone of the proceeding: the essential fact, found to be a fact, which validates the process.... [T]here cannot be commitment in the absence of finding that [the former PR] has the ability to deliver [the estate’s monies] and wil[l]fully refuses to do so or having been so ordered to deliver, petitioner divested himself of that ability.
Id. (citation omitted).
Mueller demonstrates that Rule 5.440(d) contempt proceedings involve the same constitutional limitations explained in Parisi and Pompey. Trial courts considering probate matters lack the power to use civil contempt to incarcerate a former personal representative for failing to return estate property, absent an express finding that the contemnor has the present ability to comply. See Parisi, 769 So.2d at 365; Pompey, 685 So.2d at 1013.
We reverse the civil contempt order because it failed to include a finding that Jensen had the ability to comply with it. We remand for further proceedings where additional evidence may be taken concerning the identity of the property, the property’s value, Jensen’s ability to retrieve the property from third parties, and Jensen’s ability to pay the estate the fair market value of any property that she is unable to produce.
Reversed and remanded.
KLEIN and MAY, JJ., concur.

. This court is without jurisdiction to address any procedural irregularities that led up to the order removing Jensen as the personal representative because she failed to timely appeal that order, which was a final, appeal-able order. See Fla. R.App. P. 9.110(b) (stating notice of appeal must be filed within thirty days of rendition of the order to be reviewed); In re Odza's Estate, 432 So.2d 740, 741 (Fla. 4th DCA 1983) (classifying an order removing a personal representative as a final, appealable order).

. The 2003 version of Florida Probate Rule 5.440(d) provided:
If a removed personal representative fails to file an accounting or fails to deliver all property of the estate and all estate records under the control of the removed personal representative to the remaining personal representative or to the successor fiduciary within the time prescribed by this rule or by court order, the removed personal representative shall be subject to contempt proceedings.
This rule was substantially the same when applied in Mueller, 393 So.2d at 1159.