761 So.2d 449 (2000)
David BRESCH, Petitioner,
v.
Cal HENDERSON, Sheriff, Hillsborough County Sheriff's Office and, The State of Florida, Respondent.
No. 2D00-1193.
District Court of Appeal of Florida, Second District.
June 2, 2000.
*450 Julianne Holt, Public Defender, and Tanya E. DiFilippo, Assistant Public Defender, Tampa, for Petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Jenny S. Seig, Assistant Attorney General, Tampa, for Respondent.
PER CURIAM.
David Bresch petitions this court for a writ of habeas corpus alleging illegal confinement as a result of an order finding him in civil contempt. By prior unpublished order, we stayed the trial court's order under which Bresch had been incarcerated and ordered his immediate release. We now grant the petition and vacate the contempt order.
Bresch was ordered to pay temporary child support to his wife pursuant to a Final Judgment of Injunction for Protection Against Domestic Violence. He subsequently filed a motion in the trial court to amend the terms of the injunction which, at his request, was set for hearing. When Bresch appeared for what he believed to be a hearing on that motion, the trial court, apparently on its own initiative, determined that Bresch was behind in his child support payments. The trial court then found Bresch in contempt for failing to pay child support and ordered him indefinitely incarcerated with a provision that the contempt could be purged by the payment of one thousand dollars ($1000) to his wife. Bresch was taken into custody and the instant petition ensued.
The trial court's order found Bresch in "indirect civil contempt." In reference to the finding of contempt, it stated only that the court received testimony and evidence showing that Bresch had the present ability to pay child support and was therefore in civil contempt for failing to pay. It further provided that he could purge the contempt by paying one thousand dollars ($1000) to his wife and ordered him incarcerated. The order contains no specific factual findings.
Bresch argues that the trial court failed to make a proper finding that he had the present ability to pay the purge amount and that, therefore, incarcerating him was illegal. We agree. It is well-settled that incarceration cannot be used as a means of obtaining compliance with a court order in a civil contempt proceeding without first making an affirmative finding that the person has the present ability to comply with that order. See Bowen v. Bowen, 471 So.2d 1274 (Fla.1985). In the absence of such a finding, a coercive civil sanction is transformed into a criminal punishment which has been imposed in violation of the alleged contemnor's constitutional rights. See Pompey v. Cochran, 685 So.2d 1007, 1013 (Fla. 4th DCA 1997).
To eliminate any confusion regarding the procedures to be followed or the findings necessary in order to legally impose incarceration for civil contempt in the context of child support enforcement, in 1998, our supreme court adopted Florida Rule of Family Law Procedure 12.615.[1] That rule sets out detailed procedures that must be followed before a person can be found in civil contempt for failure to pay child support and additional requirements that must be met before a contemnor can be jailed. In adopting this rule, the court noted that the rule was "created to assist the trial courts in ensuring that the due process rights of alleged contemnors are protected." See Fla. R. Fam. Law P. 12.615 commentary.
*451 Rule 12.615 clearly provides that an order providing for incarceration as a coercive sanction for civil contempt shall not only set a purge amount but shall include "a separate affirmative finding that the contemnor has the present ability to comply with the purge and the factual basis for that finding." See Fla. R. Fam. Law P. 12.615(e). In the instant case, there is no finding in the order that Bresch has the present ability to pay the purge amount. Although the order does include a finding that Bresch had the present ability to pay child support (in the amount of fifty dollars per week), this finding is not sufficient to show that Bresch had the ability to pay the one-thousand dollar purge amount. Moreover, even if the finding was somehow sufficient to demonstrate Bresch's ability to pay the purge, it is not supported by a factual basis as required by the rule. This deficiency alone requires that the order be vacated.
Although not raised by Bresch, we write to express our concern regarding other blatant errors clear from the face of the record. First, we note that rule 12.615(d) provides detailed guidelines outlining the findings that must be made in an order of civil contempt and requiring the order to contain a recital of the facts on which those findings are based. The trial judge in this case failed to make three of the four required findings and included no facts in support of the one finding that he did make.
Our greatest concern, however, is that Bresch was not notified prior to the hearing that he would be facing an allegation of civil contempt. This is a clear violation, not only of rule 12.615(b), but more importantly of Bresch's constitutional right to due process. While a person facing civil contempt sanctions is not entitled to the full panoply of due process rights afforded to a person facing indirect criminal contempt charges, he or she is nonetheless entitled to a proceeding that meets the fundamental fairness requirements of the due process clause of the Fourteenth Amendment to the United States Constitution. See Andrews v. Walton, 428 So.2d 663 (Fla.1983). Such fundamental fairness includes providing the alleged contemnor with adequate notice and an opportunity to be heard. See International Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). The failure to provide Bresch with any notice whatsoever constituted a lack of due process which would have required the trial court's order be vacated even if it had included the required findings.
We are deeply troubled that circuit courts continue to illegally incarcerate people for civil contempt in the face not only of ample case law, but also a rule which clearly delineates the procedures that should be followed in order to ensure that the due process rights of alleged contemnors are protected. As the Supreme Court noted when issuing a public reprimand to a judge found to have improperly exercised his contempt powers, "[a]lthough the contempt power is an extremely important power for the judiciary, it is also a very awesome power and is one that should never be abused." See In re Inquiry Concerning Perry, 641 So.2d 366, 368 (Fla.1994). We therefore once again repeat our admonishment that there are dangers not only to litigants but to trial judges as well when contempt powers are abused. See Conley v. Cannon, 708 So.2d 306 (Fla. 2d DCA 1998); Blalock v. Rice, 707 So.2d 738 (Fla. 2d DCA 1997).
Petition for writ of habeas corpus granted.
BLUE, A.C.J., and FULMER and NORTHCUTT, JJ., Concur.
NOTES
[1] Florida Rule of Family Law Procedure 12.615 governs civil contempt proceedings in support matters related to family law cases. See Fla. R. Fam. Law P. 12.615(a). "Family law cases" include injunctions for domestic and repeat violence. See Fla. R. Fam. Law P. 12.010(a).