WALLACE, Judge.
After finding Neil H. Sanders, II, in civil contempt for failing to comply with the support provisions of a final judgment dissolving his marriage to Gracie Murray Laird, the circuit court issued an amended writ of bodily attachment directed to any and all law enforcement agencies in the United States commanding them to arrest Sanders and hold him for transportation to Tampa, Florida. Pursuant to Florida Rule of Appellate Procedure 9.040(c), we choose to treat Sanders’ appeal as a petition for writ of prohibition. We grant the petition because the circuit court exceeded its authority by issuing a writ of bodily attachment intended to have nationwide applicability.

Facts and Procedural History

The parties were divorced on May 3, 1994, in Hillsborough County, Florida. This case represents the sixth appearance of the parties in this court.[1] On December 19, 2001, the circuit court entered the Order on Hearing of October 29, 2001. This order provided, in pertinent part:
8. The court finds that the former husband [Sanders] is in civil contempt of this court for his willful refusal to comply with his court ordered obligations to pay permanent alimony for support to the former wife [Laird], and for failing to maintain the life insurance coverage *651 on his life as required by the amended final order.
9. The former husband is again ordered to immediately comply with all provisions of the amended final order. Failing his full and complete compliance with same within ten days from the entry of this order the court shall issue a writ of bodily attachment for the arrest of the former husband to determine an appropriate sentence and sanction for this contempt of court. The principal balance of the unpaid alimony accruing through June of 1999 in the amount of $95,718.17 is bearing simple interest at the legal rate, currently 11 percent annually, or $877.42 per month.
Sanders, who lives in Ohio, apparently failed to comply.
On May 21, 2003, the circuit court issued the amended writ of bodily attachment that is the subject of this case. Omitting the caption, formal parts, and information intended to assist law enforcement personnel in identifying Sanders, the amended writ is set forth in full below:

AMENDED WRIT OF BODILY ATTACHMENT

TO: ANY AND ALL LAW ENFORCEMENT AGENCIES IN THE UNITED STATES
You are hereby commanded to arrest Neil H. Sanders, II, if he can be found in your county, or jurisdiction, and to have him held for transportation so that he can appear before the undersigned Judge of our Circuit Court, Civil Division, in and for Hillsborough County, Florida, at the Court House in Tampa, Florida to answer unto the Order on Hearing of October 29, 2001.
And have you there and then this Writ.
Service and execution of this Writ may be made on any day of the week and any time of the day or night.
Bond fixed at $144,648.60.

Prohibition

Sanders contends that the circuit court is attempting to act in excess of its authority by issuing a writ of bodily attachment intended to be served outside the State of Florida. “Prohibition is an extraordinary writ by which a superior court may prevent an inferior court or tribunal, over which it has appellate and supervisory jurisdiction, from acting outside its jurisdiction.” Mandico v. Taos Constr., Inc., 605 So.2d 850, 853 (Fla.1992). When it is shown that a lower court is without jurisdiction or attempting to act in excess of its jurisdiction, prohibition may be granted. English v. McCrary, 348 So.2d 293, 296 (Fla.1977). “Prohibition will be invoked only in emergency cases to forestall an impending present injury where person seeking writ has no other appropriate and adequate legal remedy.” Id. at 297.
In this case, we are informed that the circuit court entered an order staying the execution and enforcement of the amended writ simultaneously with its issuance pending review in this court. If the circuit court lifts the stay and directs the execution and enforcement of the writ, Sanders may sustain injury resulting from an unauthorized arrest and incarceration in Ohio or other jurisdiction outside the State of Florida for which he has no other appropriate and adequate legal remedy. Because of the damage to Sanders which is likely to follow the circuit court’s proposed course of action without authority of law, it is appropriate to issue the writ of prohibition. See McCrary, 348 So.2d at 297.

Writs of Bodily Attachment

Florida Family Law Rule of Procedure 12.615(e) contemplates the use of the *652 writ of bodily attachment to bring before the court a contemnor who has failed to comply with the purge provisions of a civil contempt order.[2] The use of the writ is constitutional if the person is brought before the court within forty-eight hours and the court finds that the contemnor still has the ability to comply with the purge provision before ordering incarceration. See Amendments to the Florida Family Law Rules of Procedure, 723 So.2d 208, 212-15 (Fla.1998); Dep’t of Revenue v. Meade, 827 So.2d 1093, 1094 (Fla. 2d DCA 2002). The statutory provisions, governing the issuance of a writ of bodily attachment in connection with a court-ordered support obligation appear in section 61.11(2), Florida Statutes (2002). See generally Michael R. Walsh, Enforcement in Florida Proceedings After Dissolution of Marriage § 3.29 (Fla. Bar CLE 6th ed.2002).

The Question of Extraterritorial Jurisdiction

The parties have not directed our attention to, and our independent résearch has not disclosed, any Florida case that addresses the question of whether a Florida circuit court has the authority to issue a writ of bodily attachment to be executed and enforced outside the State of Florida. In this regard, the very brief decision in the case of Bess v. Reno, 563 So.2d 95 (Fla. 3d DCA 1990), is of some interest. In Bess, the Third District held that a trial court did not err in “refusing, in effect, to mandamus the state attorney to institute extradition proceedings to enforce a. prior court order for bodily attachment issued in a post dissolution of marriage proceeding involving delinquent alimony and child support payments.” Id. at 96. In its opinion in Bess, the Third District did not address the authority of the circuit court to issue a writ of bodily attachment with extraterritorial effect. Therefore, we turn to an examination of the provisions of section 61.11(2) for additional guidance.
A review of section 61.11(2) reveals that it contains numerous Florida-specific references. First, section 61.11(2)(a) requires that the writ must include “information on the respondent’s physical description and location as is required for entry of the writ into the Florida Crime Information Center telecommunications system.” Pursuant to subsection (c):
Upon receipt of a writ from the clerk of the court, the sheriff [of the county in which the writ is issued] shall enter the information on any unserved writ into the Florida Crime Information Center telecommunications system to make the information available to other law en- *653 foreement agencies within the state. The writ shall be enforceable in all counties of the state.
Further, the statute gives specific directions to Florida law enforcement regarding payments to purge civil contempt:
(d) Upon receipt of the purge payment, the receiving agency shall provide the subject with a written receipt acknowledging such payment, which must be carried on the person of the respondent for a period of at least 30 days from the date of payment as proof of such payment. A sheriff receiving such payment shall forward the funds to the sheriff who entered the information about the writ into the Florida Crime Information Center telecommunications system and who shall forward the funds to the appropriate clerk of court.
(e) After a writ is modified, purged, recalled, terminated, or otherwise rendered ineffective by ruling of the court, the clerk of the court shall notify the sheriff receiving the original writ. That agency shall modify or cancel the entry in the Florida Crime Information Center telecommunications system in accordance with such notification.
§ 61.11(2)(d), (e). In light of these repeated Florida-specific directions, the execution and enforcement of a writ of bodily attachment in compliance with the statutory directives would be impossible of performance outside the State of Florida. For this reason, we conclude that section 61.11(2) must be construed as limiting the authority of the circuit courts to issue writs of bodily attachment to within the State of Florida.
We find additional support for our conclusion in the statutory mechanism for Florida law enforcement agencies to be notified once the writ is rendered ineffective so that the contemnor is not subject to repeated arrest on the same writ once the contempt has been purged. Such a mechanism does not exist for authorities outside Florida. One may imagine the following-scenario if the stay of the execution and enforcement of the writ were to be lifted in this case: Sanders could be arrested in Ohio, brought to Tampa expeditiously, and immediately purge his contempt. Upon his return to Ohio — or travel anywhere else in the United States — Sanders would be subject to arrest by law enforcement agencies ignorant of his purge. In that event, Sanders would be unjustly deprived of his liberty until the arresting agency might contact the appropriate Florida agency to inquire concerning the status of the writ. Therefore, section 61.11(2) should be construed to limit the authority of the circuit courts to issue writs of bodily attachment to within Florida so as not to diminish the statute’s procedural safeguards against an unwarranted arrest.
The legislature may set forth or limit by statute the sanctions circuit courts may use to punish contempt as long as the legislature does not eliminate the ability of circuit courts to apply the inherent power of contempt. Walker v. Bentley, 678 So.2d 1265, 1267 (Fla.1996) (citing A.A. v. Rolle, 604 So.2d 813, 815 (Fla.1992)). In Walker, the supreme court found that the legislature intruded upon judicial power when it enacted legislation purporting to divest courts of the power to impose indirect criminal contempt sanctions for specific conduct. By contrast, section 61.11(2) does not intrude upon inherent judicial power to impose civil contempt sanctions in connection with court-ordered obligations. Rather, it is a valid limitation on judicial authority over the manner of enforcing civil contempt sanctions by the use of a writ of bodily attachment.

Conclusion

We conclude that the circuit court exceeded its authority pursuant to section *654 61.11(2) in issuing a writ of bodily attachment intended to be executed and enforced outside the State of Florida. Accordingly, the circuit court is prohibited from lifting the stay of the execution and enforcement of the amended writ and from taking any other action that would give force and effect to the amended writ. Further, the circuit court is prohibited from issuing or enforcing any writ of bodily attachment providing for the arrest of Sanders outside the State of Florida.
The petition for writ of prohibition is granted.
ALTENBERND, C.J., and KELLY, J., Concur.

. See Sanders v. Laird, 829 So.2d 219 (Fla. 2d DCA 2002) (table decision); Sanders v. Laird, 736 So.2d 1192 (Fla. 2d DCA 1999) (table decision); Sanders v. Laird, 722 So.2d 202 (Fla. 2d DCA 1998) (table decision); Sanders v. Laird, 677 So.2d 905 (Fla. 2d DCA 1996); Sanders v. Laird, 636 So.2d 515 (Fla. 2d DCA 1994) (table decision).

. Sanders did not appeal the Order on Hearing of October 29, 2001, and the propriety of that order is not before us. However, in order that an omission to discuss the matter will not be interpreted as indicating approval, we merely note that the order fails to comply with Florida Family Law Rule of Procedure 12.615 in several material respects. See generally Marconi v. Walther, 819 So.2d 936 (Fla. 2d DCA 2002); Giallanza v. Dep’t of Revenue, 799 So.2d 256 (Fla. 2d DCA 2001); Bresch v. Henderson, 761 So.2d 449 (Fla. 2d DCA 2000). We also observe that the circuit court cannot impose a "sentence” as a sanction for a civil contempt. If the court orders incarceration or another coercive sanction as a means to seek compliance with a court order in a civil contempt proceeding, it must provide the contemnor with an opportunity for the purge of the contempt based on the con-temnor’s present ability to pay. Fla. Fam. L.R.P. 12.615(d)(2), (e); Marconi, 819 So.2d at 938; Bresch, 761 So.2d at 450-51. In the context of the enforcement of a court-ordered support obligation, a sentence of imprisonment or other sanctions may properly be imposed only for an indirect criminal contempt. See Fla. R.Crim. P. 3.840; Blalock v. Rice, 707 So.2d 738, 741 (Fla. 2d DCA 1997). See generally Bowen v. Bowen, 471 So.2d 1274 (Fla.1985) (discussing the differences between civil contempt and indirect criminal contempt in the enforcement of court-ordered support obligations).