903 So.2d 346 (2005)
Dianna L. AKRIDGE, Todd W. Clark, Kevin L. McMillan, Lisa K. Morrow, Earl J. Savage, and Derrick L. Courtney, Michael W. Johnson, Raymond D. Nealey, Patrick L. Elkins, and Six Hundred Twenty-five (625) Additional Petitioners, Petitioners,
v.
Lawrence W. CROW, Jr., Sheriff of Polk County, Respondent.
No. 2D03-5146.
District Court of Appeal of Florida, Second District.
June 15, 2005.
*347 James Marion Moorman, Public Defender, and Robert A. Young, Assistant Public Defender, Bartow, for Petitioners.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Katherine V. Blanco, Senior Assistant Attorney General, and Richard M. Fishkin, Assistant Attorney General, Tampa, for Respondent.
KELLY, Judge.
In this amended petition for writ of habeas corpus, the petitioners challenge as unconstitutional their confinement pursuant to Administrative Order 7-12.0, an order adopted by the circuit court in Polk County, which establishes a collections court program for the collection of fines, fees, and costs in all criminal cases. The nine named petitioners received and completed county jail sentences on misdemeanor offenses; however, each had fines, fees, and costs that remained unpaid for more than 120 days after they were sentenced. All nine were indigent when they *348 were sentenced by the trial court. They petitioned this court for a writ of habeas corpus after being arrested and jailed for failing to pay, and thereafter failing to appear before the collections court. For the reasons explained below, we concluded that their detention was unconstitutional and issued an order granting their petition with an opinion to follow.[1]
Section 938.30, Florida Statutes (2003), authorizes supplementary proceedings for the collection of fines, fees, and costs in all criminal cases. It provides that any person liable for payment of any financial obligation in any criminal case is subject to the collection proceedings authorized by the statute. The statute permits courts operating under its provisions to require individuals liable for payment to appear and be examined under oath regarding their financial ability to pay the obligation. If the court determines that an individual is unable to pay, it may convert the statutory financial obligation into a court-ordered obligation to perform community service. If an individual fails to appear at the hearing, the statute authorizes their arrest on a warrant or capias that may be issued by the clerk upon order of the court. The statute also provides that any person failing to attend a hearing or wilfully failing to comply with an order under the section, including an order to comply with a payment schedule established by the clerk of the court, may be held in civil contempt. § 938.30(a).
The circuit court in Polk County promulgated Administrative Order 7-12.0 to implement section 938.30. The Administrative Order provides that individuals who cannot pay their fines and costs at sentencing may be placed in the program. Those individuals are then given a "date certain" by which they must pay the amount owed. If they fail to pay, they are required to appear at a "pay or appear" hearing (POAH). If they do not appear, the "defendant may be found in contempt and a Capias or Writ of Bodily Attachment with a purge amount due may be issued." The purge amount is the full amount owed, plus additional administrative fees associated with the failure to appear. Individuals who are arrested are held until they can appear before the collections court which convenes once a week, on Wednesdays. The Administrative Order does not require that individuals jailed for failure to pay or appear be brought before the court at the first collections court date following their arrest.
The petitioners point to a myriad of flaws in Polk County's attempt to implement section 938.30. In general, their complaints can be divided into those attacking the constitutionality of the Administrative Order, those attacking its failure to comply with section 938.30, and those raising issues of procedural due process. The latter two are somewhat intertwined because, in general, the procedural due process problems that the petitioners raise flow from Polk County's failure to comply with the statute.
The petitioners first contend that Polk County's collections program is unconstitutional on its face because it provides for the incarceration of individuals who are unable to pay. Paragraph 17 of the Administrative Order addresses the ultimate disposition of cases brought before the collections court after an individual has failed to both pay and appear for their POAH:

*349 17) Defendants held in custody who are unable or unwilling to pay the purge amount required by the Writ of Bodily Attachment shall be brought on Wednesday afternoons at 1:00 p.m. in division M9 before the Administrative Judge for County Court, or the County Judge designated to sit in that division. At this hearing, the Judge may reduce the fines and court costs owed to judgment, suspend the defendant's driving privilege for nonpayment, set a form of release of the defendant with a new Pay or Appear day, release the defendant upon payment of the purge amount or upon finding the defendant is insolvent, incarcerate the defendant until payment is made.

(Emphasis supplied.) We agree with the petitioners that to the extent the Administrative Order provides for incarceration of defendants who are unable to pay as a means of collecting costs and fines, it is unconstitutional. See Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); see also V.H. v. State, 498 So.2d 1011 (Fla. 2d DCA 1986).
In Tate, the defendant was convicted of an offense punishable only by a fine. Because he was indigent and unable to pay the fine, he was sentenced to a term of incarceration for an amount of time sufficient for him to satisfy the fine at the rate of $5 for each day. The Supreme Court held that imprisoning an indigent solely because he is unable to pay a fine contravenes the equal protection clause by discriminating based upon economic status. Tate, 401 U.S. at 399, 91 S.Ct. 668. It also noted, however, that the State has a legitimate interest in collecting the money it is owed and that it "is not powerless to enforce judgments against those financially unable to pay a fine." Id. (quoting Williams v. Illinois, 399 U.S. 235, 244-45, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970)). Accordingly, the State may use alternatives to incarceration to obtain satisfaction of the debt.
In V.H., this court relied on the principle articulated in Tate to reverse an indigent juvenile's commitment where it was clear from the record that the trial court chose commitment rather than community control only because the juvenile was unable to pay restitution. 498 So.2d at 1011. We held that this was equivalent to the alternate sentence of imprisonment based on financial inability to pay that the Court condemned in Tate. Id. The same can be said of Polk County's collection program to the extent that it provides for the incarceration of indigent persons for no reason other than the fact that they owe a debt to the county that they are unable to pay.
Moreover, this aspect of Polk County's program is inconsistent with section 938.30(2), which expressly provides for court-ordered community service where a defendant is unable to pay. In providing this alternative, the legislature has concluded that community service is an adequate alternative to meet the State's interest in collecting the money. Thus, Polk County cannot contend that it has no alternative but to require incarceration of "insolvent" individuals "until payment can be made." Accordingly, that provision of the Administrative Order is unconstitutional.
We also agree with the petitioners that Polk County's actions pursuant to the Administrative Order violated their right to due process. Section 938.30(2) provides for a procedure where the court may order individuals to appear and be examined under oath regarding their ability to pay. It also gives the court the power to enforce that order and any other order it enters pursuant to the statute by civil contempt. § 938.30(9). The statute contains procedural safeguards to ensure that the due process rights of those subject to the statute *350 are not violated. Again, Polk County has run afoul of the statute's requirements.
Each of the nine named petitioners were arrested and incarcerated after failing to pay and failing to appear for their POAH. The Administrative Order characterizes the POAH as "a Contempt of Court Proceeding Hearing," not a hearing to determine ability to pay as contemplated by section 938.30. Accordingly, the due process protections required for contempt proceedings supply the standard by which we must evaluate the procedures employed by Polk County.
A person facing civil contempt sanctions is not entitled to the "full panoply" of due process rights afforded a person facing indirect criminal contempt charges. Bresch v. Henderson, 761 So.2d 449, 451 (Fla. 2d DCA 2000). However, he or she is entitled to a proceeding that meets the fundamental fairness requirements of the due process clause of the Fourteenth Amendment to the United States Constitution. Such fundamental fairness includes notice and an opportunity to be heard. Id. The procedures Polk County employs pursuant to the Administrative Order are inadequate to satisfy these requirements.
At the outset, we note that it is debatable whether the "order" the petitioners received from the court is sufficient to require their appearance as provided for in section 938.30(3). What they received was a memorandum of sentence, better known in Polk County as a "snap out." In this case, the snap outs for five of the nine named petitioners do not bear the signature of a judge, something that is required by Polk County's Administrative Order. We have previously expressed concern over the use of snap outs, see generally Heath v. State, 840 So.2d 307, 308 (Fla. 2d DCA 2003), and the cases cited therein, and have found that they cannot serve as a formal order for the purposes of revoking probation. See Braswell v. State, 804 So.2d 523 (Fla. 2d DCA 2001). The snap outs in the record in this case, and particularly those that are not signed by a judge, are inadequate to serve as orders requiring the recipient to appear for a hearing.
Regardless of whether the snap outs constitute orders, because of their content, they do not provide adequate notice to their recipients regarding what is expected of them and the resulting consequences for noncompliance. Most of the snap outs contain handwritten notes of dollar amounts indicating what the recipient is to pay, but the notes are not always clear and sometimes refer only to a cost order that presumably indicates the amount owed. Most, but not all, also have a notation indicating a payment date while some simply refer to a separate cost order. A few have a cost order attached, but not all of them are filled out. The snap outs for all nine petitioners contain a handwritten notation for a POAH date, for example, "POAH 10/29/03 @ 12:45."
Pursuant to the Administrative Order, the snap outs are supposed to be accompanied by an information sheet that advises the recipient of, among other things, when payment is due, where payment is to be made, and where the POAHs are held. The appendix to the amended petition contains two examples of information sheets that are supposed to accompany the snap out. Neither information sheet contains all the information required by the Administrative Order and nowhere in any of these documents are the recipients advised that the POAH is a contempt proceeding. Even assuming the nine petitioners received a snap out and an information sheet when they were sentenced or shortly thereafter, we conclude that they both are inadequate to provide the notice required *351 to satisfy the requirements of due process. See Bresch, 761 So.2d at 451 (holding that the failure to provide any notice whatsoever that an individual is facing an allegation of civil contempt violates the individual's right to due process).
The petitioners also contend, and we agree, that their incarceration for what could at most be civil contempt was unconstitutional. Each petitioner was arrested on a capias or writ of bodily attachment after failing to appear at collections court following the failure to pay their fines, fees, and costs. Each was brought to a first appearance hearing and bound over until the next collections court date. At that hearing, the court made no finding regarding the petitioners' ability to pay. Thus, the petitioners could obtain their release only by purging the full amount previously owed, plus new costs associated with their failure to pay or appear. The collections court convenes only on Wednesday afternoons. The Administrative Order does not require that those arrested and jailed for failure to pay be brought before the court at the earliest Wednesday available. The amount of time the petitioners spent in jail ranged from three days to eighty-one days.
Section 938.30(9) gives the trial court the authority to enforce orders entered pursuant to the statute only by civil contempt. The primary purpose of a civil contempt proceeding is to compel compliance with a court order, not to punish. Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985). Thus, before incarceration can be used to compel compliance with a court order, the court must determine whether the contemnor has the present ability to pay. Pompey v. Cochran, 685 So.2d 1007, 1013 (Fla. 4th DCA 1997). The key safeguard in civil contempt proceedings is a finding by the trial court that the contemnor has the ability to purge the contempt. Parisi v. Broward County, 769 So.2d 359, 364 (Fla.2000).
The situation in which the petitioners found themselves is akin to that addressed in Pompey, where an alleged contemnor failed to attend the hearing on the movant's motion for contempt. After Pompey failed to appear at the contempt hearing, the trial court entered an order finding that he was in wilful contempt, that he had the present ability to pay, and that he was to be incarcerated unless he paid the amount he owed within a set period of time. 685 So.2d at 1010. When he failed to pay, the trial court ordered his arrest. Id. Pompey filed a petition for a writ of habeas corpus arguing that because there was no evidence that he had the present ability to pay, his incarceration was unlawful.
The Fourth District concluded that the original final judgment providing for support payments created a presumption that Pompey had the present ability to pay his weekly support obligation and that his failure to appear at the hearing and rebut the presumption supported the finding that he had wilfully violated the trial court's order. Id. at 1014. However, the district court also explained that before Pompey could be incarcerated for civil contempt, the trial court must make a separate finding that he possesses the present ability to comply with the purge amount. Id. Otherwise, the order of incarceration is more than just coercive, it becomes an order of criminal contempt without the required due process. Id. at 1015, 1016.
To prevent this, the court held that where an alleged contemnor fails to appear, the trial court needs to employ a procedure where, after issuing a capias or a writ of bodily attachment, the alleged contemnor is brought before the court for a hearing to determine whether he has the present ability to pay the purge amount. *352 The court cited with approval procedures in which the alleged contemnor was brought before the court either immediately or within twenty-four hours. Since Pompey was decided, the supreme court has adopted a rule of procedure for contempt proceedings in family law cases that requires that the alleged contemnor be brought before the trial court within forty-eight hours. Fla. Fam. L.R.P. 12.616. At that point, the court can determine whether the contemnor has the present ability to pay the purge amount, and if the contemnor does not, the court can modify the purge amount to a sum which the contemnor has the present ability to pay.
There are significant differences between the situation presented in this case and that addressed by Pompey. Here, there was no motion, and because of the lack of notice, no warning that the hearing the petitioners were supposed to attend was one for contempt. Also, unlike Pompey, which involved a support obligation in a family law matter, in this case no court has ever determined that the petitioners had the ability to pay the amount owed,[2] and thus, at the time they failed to appear, there was no presumption that they had the ability to pay either the amount they owed or the purge provision of the writ of bodily attachment. Rather than distinguishing this case from Pompey, the differences in the petitioners' situations and the situation in Pompey make it even more imperative that the constitutional protections discussed in Pompey are afforded to individuals who are subject to Polk County's collections program.
Instead, the petitioners were arrested and incarcerated without any court ever having determined they had wilfully violated a court order and thus were guilty of civil contempt and without any judicial determination that they had the present ability to purge their alleged contempt. Not only did the procedures employed in this case fail to satisfy the minimal due process requirements for civil contempt, they converted what is supposed to be a coercive sanction for civil contempt into a punishment for criminal contempt, something not authorized by section 938.30. Furthermore, all of this occurred without a finding that the petitioners were actually in contempt. As stated in Amendments to Florida Family Law Rules of Procedure, 723 So.2d 208, 215 (Fla.1998):
We recognize that our decision today will impose the requirement of additional hearings on an already heavily burdened judicial system. However, inconvenience cannot be cited as a reason to deny an individual the due process to which the individual is entitled. Incarceration to obtain compliance with a court order may indeed be warranted when a contemnor has the ability to comply with the order and willfully refuses to do so, but incarceration for the simple failure to pay a debt is clearly prohibited. We will not allow our rules to be modified to serve as the basis for creating a debtor's prison.
In conclusion, we find that Administrative Order 7-12.0 and the practice employed by Polk County violate the due process protections of our constitutions. In the context of this case, the shortcomings of and the hieroglyphics used on the snap outs, coupled with the shortcomings of the information sheets, provide deficient forms of notice. Further, the failure to bring an alleged contemnor immediately *353 before the court to determine his or her present ability to pay and wilful noncompliance with a court order is a violation of the alleged contemnor's right to due process. It is for these reasons that we granted the amended petition for habeas corpus.
STRINGER and VILLANTI, JJ., Concur.
NOTES
[1] The petition was granted only as to the nine named petitioners. It was denied as to the 625 unnamed petitioners.
[2] On the contrary, at the time the fines and costs were imposed the petitioners were all determined to be indigent.