# Third District Court of Appeal

## State of Florida

Opinion filed May 9, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2471
Lower Tribunal No. 03-12047
_____

## David Kane,

Appellant,

vs.

## Ilene Sturman Kane,

Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jorge Rodriguez-Chomat, Judge.

The Bonham Law Firm, P.L. and David L. Bonham, for appellant.

Ilene Sturman Kane, in proper person.

Before EMAS, FERNANDEZ and LUCK, JJ.

PER CURIAM.

The trial court held the former husband in indirect civil contempt for not making his court-ordered alimony payments. The former husband contends on appeal that the contempt order violated his due process rights because he did not

receive the contempt motion and notice of the allegations against him until the hearing, and therefore did not have an opportunity to prepare. We agree the former husband did not receive proper notice, and reverse the contempt order and the judgment and writ of bodily attachment that followed it, and remand for further proceedings.

*Factual Background and Procedural History*

David Kane and Ilene Sturman Kane were divorced in October 2004. The final judgment of dissolution, which incorporated a marital settlement agreement, required the former husband to pay alimony to the former wife in the amount of $4,650 until 2020.

On August 14, 2015, the trial court entered an "order of referral to general magistrate" referring a "motion: for contempt [d]ated: 1/24/2014." There was no motion attached to the referral order; the trial court docket did not reflect a motion for contempt dated January 21, 2014; and there was no such motion in the record.

Based on the referral, the general magistrate held a contempt hearing on January 12, 2016. The former husband, who lived in Israel, was represented by counsel. The former husband's counsel told the general magistrate that while there had been an earlier motion for contempt that resulted in a judgment, "to my knowledge there's no other renewed motion for today. . . . I couldn't access anything." The general magistrate told the former husband's counsel that the

2

former wife, who was representing herself, had "a letter sent in that the court deems to be a motion." The former husband's counsel explained that "I just had no access to any of this and I've been looking for it. . . . [A]gain the only thing that I say is I didn't have privy to see this." At the end of the hearing, after finding the former husband in contempt, the general magistrate gave the former husband's counsel a copy of the former wife's letters. The letters were still not on the trial court's docket or in the record.

The general magistrate entered a report finding that the former wife's letter was "a Motion for Contempt in light of the fact that she [was] a pro se litigant." The general magistrate also found that the former husband had not made alimony payments since January 17, 2014. The general magistrate recommended that a judgment be entered against the former husband in the amount of $158,474.73.

The trial court ratified and approved the general magistrate's report, and adopted her findings and recommendations. The trial court entered judgment consistent with the general magistrate's recommendation, and a writ of bodily attachment for the former husband to be brought before the trial court within forty-eight hours of arrest.

The former husband moved for rehearing because he was denied due process. The former husband contended, as he did at the January 12, 2016 general magistrate hearing, that he did not receive the former wife's letters which

3

prompted the referral, and that the letters were never made part of the record. Because he didn't have the letters until the day of the hearing, the former husband argued he was "denied the ability to properly prepare for the <u>contempt</u> hearing" and was "prejudiced as a result. Such action by the [trial court] constitutes a denial of due process." (emphasis in original.) The trial court denied the rehearing motion.

The former husband appeals the order adopting the general magistrate's report, the judgment, the writ of bodily attachment, and the order denying the motion for rehearing.

*Discussion*

On appeal, the former husband contends, as he did before the general magistrate and in his rehearing motion, that he did not receive a copy of the former wife's letters in advance of the contempt hearing. Because the former wife did not send him the letters, and they were never included in the record, the former husband argues he was denied fair notice and an opportunity to be heard at the contempt hearing.

> "It is a fundamental tenet of our system of civil justice that a party must have actual notice of and time to prepare for a contested hearing." <u>Dileo v. Dileo</u>, 939 So. 2d 181, 184 (Fla. 5th DCA 2006) (citing <u>Harreld v. Harreld</u>, 682 So. 2d 635 (Fla. 2d DCA 1996)). Moreover, "[w]hile a person facing civil contempt sanctions is not entitled to the full panoply of due process rights afforded to a person facing indirect criminal contempt charges, he or she is nonetheless entitled to a proceeding that meets the fundamental fairness

4

requirements of the due process clause of the Fourteenth Amendment to the United States Constitution." Bresch v. Henderson, 761 So. 2d 449, 451 (Fla. 2d DCA 2000) (citation omitted). These fundamental principles are applicable for civil contempt hearings in the family law context. Dileo, 939 So. 2d at 184 (citing Woolf v. Woolf, 901 So. 2d 905 (Fla. 4th DCA 2005) (additional citation omitted)).

Baldwin v. Baldwin, 204 So. 3d 565, 567 (Fla. 5th DCA 2016). In family law civil contempt proceedings based upon a party's failure to meet his or her support obligations, the family law procedural rules spell out the due process requirements of proper notice and time to prepare:

> **(b) Motion and Notice**. Civil contempt may be initiated by motion. The motion must recite the essential facts constituting the acts alleged to be contemptuous. No civil contempt may be imposed without notice to the alleged contemnor and without providing the alleged contemnor with an opportunity to be heard. The civil contempt motion and notice of hearing may be served in accordance with Florida Rule of Judicial Administration 2.516 provided notice is reasonably calculated to apprise the alleged contemnor of the pendency of the proceedings. The notice must specify the time and place of the hearing and must contain the following language: "FAILURE TO APPEAR AT THE HEARING MAY RESULT IN THE COURT ISSUING A WRIT OF BODILY ATTACHMENT FOR YOUR ARREST. IF YOU ARE ARRESTED, YOU MAY BE HELD IN JAIL UP TO 48 HOURS BEFORE A HEARING IS HELD." This notice must also state whether electronic recording or a court reporter is provided by the court or whether a court reporter, if desired, must be provided by the party.

Fla. Fam. L. R. P. 12.615(b) (emphasis added).

The failure to serve the contempt motion on the opposing party, and to tell him or her "the essential facts constituting the acts alleged to be contemptuous," in advance of the contempt hearing, is a violation of the opposing party's due process

rights to proper notice and time to prepare for the civil contempt proceeding. Our sister district courts have reversed contempt judgments where the opposing party did not have sufficient notice of the contempt motion and the essential facts to give him or her time to prepare.

In Woolf, for example, the former wife filed her motion for contempt two days before the contempt hearing. Woolf, 901 So. 2d at 910. The former husband complained that "the hearing officer erred in going forward with the contempt motion without proper notice." Id. at 911. The fourth district agreed, explaining:

> While a person facing civil contempt is not entitled to all of the due process rights afforded to a person facing indirect criminal contempt, he or she is nonetheless entitled to a proceeding that meets the fundamental fairness requirements of the due process clause of the Fourteenth Amendment. This requires that the alleged contemnor be provided with adequate notice and an opportunity to be heard. Two days notice is insufficient notice of a contempt hearing.

Id. (citations omitted). The appellate court "reverse[d] the contempt order and remand[ed] for further hearing upon proper notice." Id. at 915.

Also, in Baldwin, the parties appeared for trial on their petitions for dissolution of marriage. Baldwin, 204 So. 3d at 566. During the trial, "the court became concerned that Former Husband had not complied with an earlier court order that required the parties to disclose all of their assets at least seven days prior to trial." Id. The trial court reviewed the former husband's financial affidavit, and "summarily moved into an order to show cause hearing giving Former Husband an

6

opportunity to explain why he should not be held in indirect criminal contempt for failing to comply with mandatory disclosure." Id. at 566-67 (quotation and alteration omitted). After hearing the former husband's explanation, the trial court held him in indirect civil contempt. Id. at 567.

On appeal, the former husband "argue[d] that the trial court erred in holding the show cause hearing without allowing him sufficient time to prepare a defense to the contempt charge." Id. The fifth district agreed, concluding that "the trial court's failure to provide Former Husband with proper notice and time to prepare for a civil contempt proceeding clearly violated his right to due process." Id. at 566. The court remanded with directions for the trial court to vacate its contempt order. Id.; see also Dileo, 939 So. 2d at 183-84 (reversing contempt order and quashing writ of bodily attachment because former husband had evacuated his home due to hurricane and did not receive proper notice of contempt hearing under Rule 12.615).

Here, the former husband received less notice than the Woolf and Baldwin former husbands. Kane did not receive the former wife's letter, which prompted the contempt hearing, until the day of the hearing and after the evidentiary portion was over. The letter was not available on the docket or in the record. And the former husband was unaware of the allegations against him until the day of the hearing. The general magistrate was told that the former wife's letter was

unavailable and the former husband had not seen it even as the hearing began and the general magistrate took testimony.

Even the <u>Baldwin</u> former husband knew the allegations against him – because the trial court told him – before the trial court immediately began contempt proceedings by issuing an order to show cause and holding the hearing the same day as the trial. Here, the former husband did not know the essential facts of the former wife's contempt allegations until the end of the hearing, after the former wife testified and the general magistrate made her contempt findings. If two days was not proper notice for due process purposes in <u>Woolf</u>, then no notice before the contempt finding was not proper notice in this case.

*Conclusion*

We conclude that the trial court denied the former husband due process when it adopted the general magistrate's report, and entered the March 3, 2017 judgment and the writ of bodily attachment. As in <u>Woolf</u> and <u>Baldwin</u>, we vacate these orders and remand for further proceedings after the former wife's letters are made part of the record and the former husband is given proper notice of the letters, the essential facts against him, and an opportunity to prepare.

Reversed and remanded with directions.